UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ORGANIZED COMMUNITIES AGAINST DEPORTATIONS, IMMIGRANT DEFENSE PROJECT, and CENTER FOR CONSTITUTIONAL RIGHTS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 21 C 2519 |
| v. | ) ) | Judge Blakey |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION FOR EXPEDITED PRODUCTION OF RESPONSIVE DOCUMENTS**

**PRELIMINARY STATEMENT**

Plaintiffs Organized Communities Against Deportation ("OCAD"), Immigrant Defense Project ("IDP"), and Center for Constitutional Rights ("CCR"), nonprofit organizations that work to disseminate information throughout immigrant communities, bring this motion to expedite processing of a request filed a year and a half ago under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. Plaintiffs' request sought information on a matter of great public interest: Defendant's operation of the "Citizens Academy" programs, which appear to encourage civilians to engage in vigilante policing of immigrant communities. Although Plaintiffs filed the request on July 16, 2020, and filed their complaint on May 11, 2021, Defendant U.S. Immigration and Customs Enforcement ("ICE") has yet to produce a single document.

As organizations primarily engaged in disseminating information to immigrant communities and advocates, Plaintiffs OCAD and IDP have a "compelling need" to share information regarding the Citizens' Academy program with the public, as it is crucial to public understanding of the workings of ICE and important for upcoming budget discussions in Congress. Thus, Plaintiffs were and are entitled to expedited processing of their request. 5 U.S.C. § 552(a)(6)(E).

The FOIA requires federal agencies to begin processing expedited requests within twenty days, and failure to do so gives rise to a presumption of agency delay, which may be rebutted only by evidence that production is not practicable. *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 3d 30, 39-40 (D.D.C. 2006). Defendant has produced no such evidence, and in any case is far beyond the twenty-day mark. At their proposed rate of processing 500 pages per month, it would take at least another two years to process the more than 12,000 potentially responsive documents. *See* Def.'s Dec. 22, 2021 Status Report, ECF No. 18 at 1.

Moreover, even if Plaintiffs were not entitled to expedited processing under the FOIA, the delays in this case – passage of eighteen months since filing their request and eight months since filing their complaint – would warrant a court order to begin production immediately. This is particularly so where the requested documents are about a public relations effort unlikely to implicate national security, pending investigations, or similarly sensitive information. Plaintiffs therefore bring this motion to expedite processing of their request under the Civil Priorities Act, 28 U.S.C. § 1657, which provides that "court[s] shall expedite the consideration of . . . any . . . action if good cause . . . is shown." 28 U.S.C. § 1657(a).

## BACKGROUND

In April 2019, the Trump Administration announced a "national roll-out" of the Homeland Security Investigations ("HSI") Citizens Academy program.[1] Although not an official school or accredited educational program, the "Academy" is run through ICE's Office of Public Affairs and is branded as a community outreach program for selected community leaders and members of the public.[2] While the program had existed in select cities prior to this announcement, it was given new life with the expansion: it would now focus on Enforcement and Removal Office (ERO) operations, including training in "defensive tactics, firearms

---

[1] *Citizens Academy: Inviting Participants from Local Communities to Learn More about HSI*, U.S. IMMIGR. AND CUSTOMS ENFORCEMENT (last updated Jan. 8, 2021), https://www.ice.gov/outreach-programs/citizens-academy.
[2] *Id.*; News Release, U.S. Immigr. and Customs Enforcement, TOP STORY: ICE Launches Inaugural Citizens' Academy (last updated Feb. 27, 2015), https://www.ice.gov/news/releases/top-story-ice-launches-inaugural-citizens-academy.

familiarization and targeted arrests."[3] In July 2020, Defendant announced it would pilot its new ERO Academy in Chicago.[4]

Massive public outcry followed. Local politicians and widespread media coverage raised concerns that the Academies would train and empower amateur volunteers to target members of immigrant communities for arrest and removal.[5] Locating the program in Chicago felt particularly targeted given Chicago's status as a sanctuary city and the Trump Administration's policies withholding funding and other privileges from cities who took a stand to protect immigrants.[6] Members of Congress took action, criticizing the Citizens Academy program as part of a larger debate on the DHS budget.[7] The Chicago pilot program,

---

[3] Chantal Da Silva, *ICE Offering 'Citizens Academy' Course with Training on Arresting Immigrants*, NEWSWEEK (July 9, 2020), https://www.newsweek.com/ice-launching-citizens-academy-course-how-agency-arrests-immigrants-1516656.

[4] News Release, U.S. Immigr. and Customs Enforcement, ICE Offers First Citizens Academy for Public to Learn More About Agency's Mission in Chicago (July 13, 2020), https://www.ice.gov/news/releases/ice-offers-first-citizens-academy-public-learn-more-about-agencys-mission-chicago.

[5] *See* Grace Hauck, *ICE Is Holding a Citizens Academy in Chicago. Mayor, Lawmakers Say 'Vigilantes' Aren't Welcome*, USA TODAY (July 16, 2020), https://www.usatoday.com/story/news/nation/2020/07/16/chicago-ice-citizen-academymayor-says-vigilantes-not-welcome/5453758002; Maria Ines Zamudio, *ICE Citizens Trainings May Be A 'Vigilante Academy,' Chicago Alderman Warns*, NPR (July 10, 2020), https://www.npr.org/local/309/2020/07/10/889726473/i-c-e-citizens-trainings-may-be-a-vigilante-academy-chicago-alderman-warns; Press Release, Tammy Duckworth, U.S. Senator, Duckworth Responds to ICE's Citizens Academy Pilot Program in Chicago (July 17, 2020), https://www.duckworth.senate.gov/news/press-releases/duckworth-responds-to-ices-citizens-academy-pilot-program-in-chicago.

[6] *See* Zamudio, *supra* note 5 (quoting Alderperson noting Chicago's status as a sanctuary city); Kristina Cooke & Ted Hesson, *What Are 'Sanctuary' Cities and Why Is Trump Targeting Them*, REUTERS (Feb. 25, 2020), https://www.reuters.com/article/us-usa-immigration-crime/what-are-sanctuary-cities-and-why-is-trumptargeting-them-idUSKBN20J25R.

[7] Chantal Da Silva, *Sen. Merkley Calls for ICE 'Citizens Academy' to Be Defunded*, NEWSWEEK (July 14, 2020), https://www.newsweek.com/sen-merkley-calls-ice-citizens-academy-defunded-1517594; Chantal Da Silva, *DHS Spending Bill Amended to Ban Funding for ICE's Citizen's Academy*, NEWSWEEK (July 15, 2020), https://www.newsweek.com/dhs-spending-bill-amended-ban-funding-ices-citizens-academy-1518059; *see also* Letter to Matthew T. Albence, Acting Director, U.S. Immigr. & Customs Enforcement, from Jamie Raskin, Chairman, Subcomm. On Civil Rights & Civil Liberties, & Robin Kelly, Member, Aug. 14, 2020, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-08-14.JR%20Kelly%20to%20Albence%20re%20ICE%20Citizen%20Academy.pdf; Press Release, U.S. Senator Dick Durbin, Durbin Statement on Creation Of ICE "Citizens Academy" Pilot Program in

set to start in fall 2020, was postponed due to the COVID-19 pandemic but has not been canceled.[8] Despite the purported goal of increasing transparency into ICE's operations, however, ICE has not made additional information available about the content, scope, and purpose of its Citizen Academy programs. Although the presidential administration has changed,[9] debates over the funding and scope of ICE removal operations remain urgent as budget negotiations loom in Congress.[10] With the potential for the program to resume at any time, the Citizens Academy remains a subject of paramount public interest.

On July 16, 2020, Plaintiffs Organized Communities Against Deportation ("OCAD"), Immigrant Defense Project ("IDP"), and Center for Constitutional Rights ("CCR") submitted a FOIA request ("Request") to U.S. Immigration and Customs Enforcement as the agency responsible for the Citizens Academy program. Plaintiffs sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I) and 6 C.F.R. § 5.5(e)(ii), which entitles requestors to expedited processing where there is "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information." *See* FOIA Req., Compl. Ex. A, ECF No. 1-1, at pp. 6-7. Defendant acknowledged Plaintiff's FOIA request on July 20, 2020, and constructively denied the request for expedited processing. Compl. Ex. B, ECF No. 1-2. After Plaintiff appealed Defendant's denial of the

---

Chicago (July 17, 2020), https://www.durbin.senate.gov/newsroom/press-releases/durbin-statement-on-creation-of-ice-citizens-academy-pilot-program-in-chicago.
[8] Elvia Malagon, *ICE Postpones Controversial 'Citizens Academy' in Chicago*, CHI. SUN-TIMES (Sep. 3, 2020), https://chicago.suntimes.com/2020/9/3/21421321/chicago-immigration-ice-citizens-academy-postponed.
[9] Plaintiffs are not aware of any announcement discontinuing the program and the ICE website still contains information about the program. *Citizens Academy*, *supra* note 1.
[10] *See, e.g.*, *Biden's Budget Betrays Immigrants and Border Communities*, NAT'L IMMIGR. PROJECT NAT'L LAWYERS GUILD (May 28, 2021), https://nipnlg.org/pr/2021_28May_DHS-budget.html (noting the Biden Administration's budget requested increases for interior enforcement programs and continued to expand cooperation agreements between ICE and local police departments); *see also* Press Release, White House, Bill Signed: H.R. 6119 (Dec. 3, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/12/03/bill-signed-h-r-6119 (indicating that the current budget resolution is only through Feb. 18, 2022).

expedited processing request on August 25, 2020, Compl. Ex. C, ECF No. 1-3, ICE affirmed the denial on September 17, 2020, Compl. Ex. D, ECF No. 1-4. After still receiving no documents from ICE for many months, Plaintiffs filed this lawsuit on May 11, 2021. Compl., ECF No. 1.

Defendant still has produced no documents and did not meet the initial court-ordered deadline to provide a definite end date for its search for responsive records. *See* Def.'s Dec. 22, 2021 Status Report, ECF No. 18. Even with extra time to complete its search, Defendant still inexplicably plans to wait another five weeks before producing anything and did not provide a definite schedule or total number of records. *See* Def.'s Jan. 5, 2022 Status Report, ECF No. 20. Defendant has proposed 500 pages per month for only *processing* more than 12,000 pages, while Plaintiffs proposed that Defendant *produce* 1,500 pages per month. Plaintiffs also are willing to prioritize the requests regarding Puerto Rico, Chicago, and New York field offices— with the possibility of subsequently narrowing the scope of search. Defendant claims that an approach of prioritizing the production of documents most of interest to Plaintiffs is not possible; rather, ICE claims that the only prioritization that would have been feasible would have required Plaintiffs to completely discard certain requests before ICE began its search. *See* Nov. 22, 2021 Joint Status Report, ECF No. 16, at pp. 3, 4. Plaintiffs have met and conferred with Defendant prior to filing this motion[11] and the parties were unable to agree on a production schedule.[12]

Given the urgency of the information sought, the significant amount of time since Plaintiffs' request was submitted and their complaint filed, and Defendant's failure to propose a workable schedule for production of the documents at issue in this litigation, court intervention

---

[11] This meet and confer took place by telephone on January 11, 2022 at 3:30 p.m. EST. Alex Hartzler represented Defendant and Rebecca Guterman and Ghita Schwarz represented Plaintiffs.

[12] Defendant opposes this Motion. Defendant requests 21 days to respond to this Motion. Given the nature of this Motion and the many months already given to Defendant to complete its search, Plaintiffs urge a 14-day deadline for Defendant's response.

5

is necessary prior to the next status report deadline. *See* Jan. 7, 2022 Minute Entry, ECF No. 23 (ordering joint status report by March 31, 2022). Because there is ample good cause to expedite Defendant's production, Plaintiffs respectfully seek relief from the Court to "assure that [Plaintiffs'] right to information [under the FOIA] is not submerged [by] government obfuscation" or delay. *Patterson v. IRS*, 56 F.3d 832, 837 (7th Cir. 1995) (citations omitted). Plaintiffs respectfully seek an order from this Court requiring Defendant to produce 1,500 pages or in the alternative process 3,000 pages each month following the Court's Order.

## ARGUMENT

The Civil Priorities Act, 28 U.S.C. § 1657, provides that "court[s] shall expedite the consideration of . . . any . . . action if good cause . . . is shown." 28 U.S.C. § 1657(a). It further provides that "'[g]ood cause' is shown if a right under the Constitution of the United States or a Federal Statute (*including rights under section 552 of title 5[, FOIA]*) would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Id.* (emphasis added).

There is good cause for expedition here.

**I. All FOIA Actions Are Especially Appropriate for Expedition.**

As courts in the Seventh Circuit have recognized, "FOIA is intended to ensure the *prompt* disclosure of information, not its suppression." *Donham v. U.S. Dep't of Energy*, 192 F. Supp. 2d 877, 882 (S.D. Ill. 2002) (emphasis added); *see Nat'l Immigrant Just. Ctr. v. U.S. Dep't of Homeland Sec.*, 2015 U.S. Dist. LEXIS 11520, at *2 (N.D. Ill. Feb. 2, 2015) (apologizing on behalf of the Court when it could not expeditiously rule on a FOIA issue). Expedition is warranted because the FOIA's purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d

381, 386 (7th Cir. 2015) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Recognizing the importance of prompt responses, "Congress wrote a tough statute on agency delay in FOIA compliance, and [the 1996 amendments] made it tougher." *Donham*, 192 F. Supp. 2d at 882 (quoting *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999)); *see also* H. Rep. No. 876, at 126, 93d Cong., 2d Sess. (1974) (recognizing agency delay as often "tantamount to denial"). In view of these principles, Congress made the FOIA the "first among equals" in terms of discretionary expedition by courts — in other words, "worthy of special consideration." *Freedom Commc'ns Inc. v. FDIC*, 157 F.R.D. 485, 486 (C.D. Cal. 1994).

In line with Congress's intention, courts have held that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses.'" *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 36 (D.D.C. 2006) (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). Courts protect against such delays in FOIA suits by imposing deadlines on the government to produce responsive documents. *See Donham*, 192 F. Supp. 2d at 884 (refusing to "look the other way and allow [Defendant agency] an indefinite amount of time to respond"); *Hamlin v. Kelley*, 433 F. Supp. 180, 183 (N.D. Ill. 1977) (granting partial summary judgment for Plaintiff *sua sponte* and setting a monthly production schedule). Indeed, courts have demanded production on timelines more ambitious than those sought by Plaintiff here. *See, e.g.*, *Nat'l Immigr. Just. Ctr.*, 2015 U.S. Dist. LEXIS 11520, at *30 (ordering remaining production in 45 days even where more than 10,000 documents only "scratch[ed] the surface"); *Boundaoui v. FBI*, No. 17-4782 (N.D. Ill.) (TMD), Dkt. No. 40 (ordering production of approximately 1,649 pages within three weeks of order and review of 3,500 pages each month thereafter) (attached as Ex. 1 to Nov. 22, 2021 Joint Status Report); *Immigrant Def. Project v. ICE,* No. 14-6117 (S.D.N.Y.) (JPO), Dkt.

No. 15 (ordering production of 1,500 pages within one month of order and production of 2,000 pages each month thereafter) (attached as Ex. 2 to Nov. 22, 2021 Joint Status Report); *Nat. Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 42 (D.D.C. 2002) (finding defendant agency "woefully tardy" for delaying ten months to plaintiff's FOIA request and ordering production of 7,549 pages within 48 days).

As the House of Representatives explained in its report on the Civil Priorities Act, expedition is consistent with both the nature of FOIA litigation and the overarching purpose of the Act. Because "most FOIA cases do not involve extended discovery or testimony[,]" FOIA cases need "not burden court dockets for extensive periods of time." H.R. Rep. No. 985, 98th Cong., 2d Sess., at 6 (1984). More fundamentally, FOIA "is a major tool through which the public and the press obtain information about their government," and "extended delays in court can encourage unjustified refusals to disclose information . . . [and] hamper reporting of governmental activities." *Id.* at 5-6. Accordingly, "the 'good cause' provision [of the Civil Priorities Act should] be liberally construed by the courts in granting requests for expedited consideration under the [FOIA]." *Id.* at 6.

In addition, standard administrative burdens and backlog alone are not enough to justify agency delays under FOIA. *Donham*, 192 F. Supp. 2d at 882 (rejecting administrative backlog as "exceptional circumstances" for a two-year delay); *Hamlin*, 433 F. Supp. at 182 (rejecting "[i]nadequate staff, insufficient funding or a great number of requests" as "exceptional circumstances" for approximately a one-year delay). "Allowing even more time for an already extraordinarily protracted production of records [more than 10,000 pages in three years] based on problems faced by many, if not all, government agencies would undermine the purpose behind the FOIA." *Nat'l Immigrant Just. Ctr.*, 2015 U.S. Dist. LEXIS 11520 at *29 (citing *Donham* and *Hamlin* as "instructive" analysis even where section 552(a)(6)(C) does not apply).

This is especially so where, as here, plaintiffs are entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E). Plaintiffs OCAD and IDP are organizations primarily engaged in disseminating information. *See* Ex. A ¶ 3 (describing OCAD's work to disseminate information via social media, organize public forums and workshops, and generally work to "educate and inform the public about the widespread benefits of open migration policies"); Ex. B ¶¶ 1, 4, 5 (describing IDP's work to disseminate information about ICE tactics and legal and policy remedies to immigrants, legal practitioners, and the public at large). Such organizations need not have dissemination as their "sole occupation"; rather, information dissemination can work hand-in-hand with advocacy efforts. *See, e.g.*, *Protect Democracy Project, Inc. v. U.S. Dep't of Defense*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (finding that advocacy organization Protect Democracy "easily" satisfied the standard of "primarily engaged in disseminating information"); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (categorizing the advocacy organization The Leadership Conference as "primarily engaged in disseminating information"). The information Plaintiffs request is vital to their missions of educating the public and their constituents particularly in advance of budget negotiations in Congress and ongoing debates over immigration policies at and within U.S. borders.[13] *See generally* Ex. A (OCAD Affidavit); Ex. B (IDP Affidavit). Courts have concluded that a "prima facie showing of agency delay exists when an agency fails to process an expedited FOIA request within the [twenty day] time limit applicable to standard FOIA requests." *Brennan Ctr. for Just. at N.Y. Univ. Sch. of Law v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 548-49 (S.D.N.Y. 2018)

---

[13] *See, e.g.*, Priscilla Alvarez, *Biden Administration Results in More of the Same Trump Immigration Policies*, CNN (Dec. 30, 2021), https://www.cnn.com/2021/12/30/politics/biden-harris-immigration/index.html (discussing changes to enforcement priorities and continuing pressure from advocates to overturn border policies like one that prevents migrants from claiming asylum); Kimberlee Speakman, *Biden Administration Appeals Ruling on DACA Ban*, FORBES (Sep. 10, 2021), https://www.forbes.com/sites/kimberleespeakman/2021/09/10/biden-administration-appeals-ruling-on-daca-ban/?sh=5efc55e975c7 (noting ongoing litigation that could "put[] thousands of people who entered the U.S. as children at risk of deportation").

(citing *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 39). An agency may rebut this "presumption of agency delay" only by "present[ing] credible evidence that disclosure within such time period is truly not practicable." *Id.*

Here, Plaintiffs submitted their FOIA request seeking records related to the Citizens Academy program on July 16, 2020. One and a half years have passed since Plaintiffs' FOIA request was submitted, and, as in *Brennan Ctr.*, "nothing has been produced. Nor is there any schedule of production. Accordingly, the presumption of agency delay applies." 300 F. Supp. 3d at 549. Because Defendant has yet to produce any evidence demonstrating why it did not meet the twenty-day deadline, much less why it has failed to produce any responsive documents eighteen months later, Defendant will not be able to credibly demonstrate that a production order of 1,500 pages produced per month is impracticable here.

## II. Expedition is Warranted Here.

There is "a factual context that indicates that a request for expedited consideration has merit." 28 U.S.C. § 1657(a). Plaintiffs' right to access the requested information exemplifies that factual context. The requested information concerns Citizens Academy programs that could begin again at any moment, in the communities through which Plaintiffs disseminate information and advocate for the safety and well-being of immigrants. Time is of the essence in FOIA litigation, and Defendant has already received much extra time particularly considering the information at issue concerns a public program meant to increase transparency about ICE operations, rather than any sensitive or personally identifying files. Plaintiffs' request is also inextricably intertwined with immigrant communities' ability to weigh in on important budgetary and legislative debates, set to begin with the return of Congress to session in early 2022.

Expedition is warranted because "the public interest in enforcement of the statute is particularly strong." H. Rep. 98-985, at 6 (1984). Information about the Citizen Academy program falls squarely within FOIA's "central purpose": "to guarantee 'that the Government's activities be opened to the sharp eye of public scrutiny.'" *Lakin Law Firm, P.C. v. Fed. Trade Comm'n*, 352 F.3d 1122, 1123 (7th Cir. 2003) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Further, delay in production of responsive information is "antithetical" to the FOIA, *Families for Freedom v. U.S. Customs & Border Patrol*, 837 F. Supp. 2d 331, 337 (S.D.N.Y. 2011); *see also Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 40 ("[P]ublic awareness of the government's actions is 'a structural necessity in a real democracy' . . . so too is *timely* public awareness[,] . . . as 'stale information is of little value.'" (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) & *Payne Enters.*, 837 F.2d at 494)) (emphasis in original).

Significant media coverage further supports the fact that there is compelling public interest in the Citizens Academy program and its true function and content. This includes numerous news and opinion pieces in leading news outlets throughout the country.[14] The

---

[14] Hauck, *supra* note 5 (USA Today); Zamudio, *supra* note 5 (NPR); Chantal Da Silva, *ICE Flooded With Thousands of Fake Applications for 'Citizens Academy'*, NEWSWEEK (July 30, 2020), https://www.newsweek.com/ice-flooded-thousands-fake-applications-citizens-academy-1521597; Mauricio Pena, *After ICE Postpones Chicago Citizens Academy, Local Immigrant Groups Breathe a 'Sigh Of Relief' — For Now*, BLOCK CLUB CHI. (Sept. 3, 2020), https://blockclubchicago.org/2020/09/03/after-ice-postpones-chicago-citizens-academy-local-immigrant-groups-breathe-a-sigh-of-relief-for-now; Christina Gonzalez, *ICE Citizen Academy Causes Uproar in Chicago, Has Been Going on in Los Angeles—For Years*, FOX 11 L.A. (July 10, 2020), https://www.foxla.com/news/ice-citizen-academy-causing-uproar-in-chicago-has-been-going-on-in-los-angeles-for-years; Press Release, Detention Watch Network, ICE is Recruiting a 'Citizen' Army to Fuel Its Propaganda Machine (July 9, 2020), https://www.detentionwatchnetwork.org/pressroom/releases/2020/ice-recruiting-citizen-army-fuel-its-propaganda-machine.

programs generated controversy both at the local level in Chicago and the federal level.[15] More coverage is likely to come once more information comes to light—an outcome only possible through FOIA requests. Without this information, Plaintiffs cannot fulfill their educational and advocacy roles for the immigrant communities of which they are part and support. Allowing ICE to continue to delay until the documents are no longer relevant—when the Citizen Academy programs could resume at any point—is, as Congress has said, "tantamount to denial" of documents to which Plaintiffs are entitled. H. Rep. No. 876, at 126.

In addition, the nature of the requested documents here poses no barrier to expeditious processing. Plaintiffs do not intend to seek information that contains the kind of information that requires particular attention to sensitivity, such as national security; to the contrary, they seek documents regarding a public affairs effort designed to increase transparency about ICE. Expeditious processing therefore should be straightforward and especially "practicable" in this case. *See* 5 U.S.C. § 552(a)(6)(E)(iii).

Accordingly, "Plaintiff[s]' request is entitled to rapid consideration by the Court and the [government]." *Freedom Commc'ns Inc.*, 157 F.R.D. at 487.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to expedite and order Defendant to produce to Plaintiffs 1,500 pages of responsive records, or in the alternative to

---

[15] Letter to Matthew T. Albence, *supra* note 7; *see* Chantal Da Silva, *Sen. Merkley Calls for ICE 'Citizens Academy' to Be Defunded, supra* note 7; Press Release, U.S. Representative Jan Schakowsky, *Schakowsky, García, and Quigley Take Steps to Prevent ICE from Launching Citizen Academy Program* (July 15, 2020), https://schakowsky.house.gov/media/press-releases/schakowsky-garc-and-quigley-take-steps-prevent-ice-launching-citizen-academy; Ted Cox, *Quigley Cuts Funds for ICE 'Citizens Academy'*, ONE ILL. (July 16, 2020), https://www.oneillinois.com/stories/2020/7/16/quigley-bill-cuts-funds-for-ice-citizens-academy; Press Release, U.S. Senator Dick Durbin, *supra* note 7; Press Release, U.S. Senator Tammy Duckworth, *supra* note 5; Ald. Carlos Ramirez-Rosa (@CDRosa), TWITTER (July 16, 2020, 2:57 PM), https://twitter.com/cdrosa/status/1283853287054336000.

process 3,000 pages of responsive records, within a month of the Court's Order and each month thereafter.

Date: January 12, 2022

Respectfully submitted,

s/ Rebecca Guterman
LAM NGUYEN HO
REBECCA GUTERMAN
Attorneys for Plaintiffs OCAD and IDP
Beyond Legal Aid
17 North State Street
Suite 1380
Chicago, Illinois 60602
(773) 888-1404
lho@beyondlegalaid.org
(929) 265-2204
rguterman@beyondlegalaid.org

s/ Ghita Schwarz
GHITA SCHWARZ*
Attorney for Plaintiffs CCR, OCAD, and IDP
LatinoJustice PLRDEF
475 Riverside Drive
New York, NY 10115
(212) 739-7510
gschwarz@latinojustice.org

*Pro Hac Vice Admission Pending*

s/ Maria LaHood
MARIA LAHOOD**
Attorney for Plaintiffs CCR, OCAD and IDP
Center for Constitutional Rights
666 Broadway
7th Floor
New York, NY 10012
(212) 614-6464
mlahood@ccrjustice.org

**Admitted Pro Hac Vice*