UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ORGANIZED COMMUNITIES AGAINST DEPORTATIONS, IMMIGRANT DEFENSE PROJECT, and CENTER FOR CONSTITUTIONAL RIGHTS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 21 C 2519 |
| v. | ) ) | Judge Blakey |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff organizations have sued for the release of government records under the Freedom of Information Act, 5 U.S.C. § 552. They say that ICE has improperly withheld records in response to their FOIA request. But ICE has conducted adequate searches for responsive records and has not improperly withheld any material. As a result, ICE is entitled to summary judgment.

**Background**

This lawsuit arises out of a FOIA request that plaintiffs sent to ICE in July 2020, seeking "information related to 'citizen's academies' operated by ICE." Defendant's Statement of Fact (DSOF) ¶ 12. ICE ultimately produced 6,956 pages of responsive records over the course of 17 productions. DSOF ¶ 31.

**Argument**

ICE is entitled to summary judgment in its favor. ICE conducted adequate searches for records responsive to plaintiffs' requests, produced the responsive records, and properly withheld certain material that FOIA exempts from disclosure.

Summary judgment is proper when "there is no genuine issue as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). FOIA cases are typically resolved on summary judgment because they often hinge on whether an agency's undisputed actions violated FOIA. *E.g.*, *Bassiouni v. CIA*, 2004 WL 1125919, *2 (N.D. Ill. Mar. 31, 2004). The court's review is limited to whether the agency (1) improperly (2) withheld (3) agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (judicial authority requires violation of all three components). A FOIA defendant's motion should be granted if it provides the court with declarations or other evidence showing that it conducted an adequate search for records and that any responsive records were produced or are exempt from disclosure. *E.g., Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (declarations "indicating the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden").

**I.    Adequate Search for Responsive Records**

ICE has satisfied its burden on summary judgment to demonstrate that it conducted adequate searches for responsive records because it has shown that it made a good-faith effort to conduct searches "reasonably calculated to uncover all relevant documents." *Hart v. FBI*, 1996 WL 403016, *2 (7th Cir. July 16, 1996); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (agency must make good-faith effort to conduct search using methods that "can be reasonably expected to produce the information requested"). An agency can establish the reasonableness of its search by reasonably detailed, nonconclusory affidavits describing its efforts, and such submissions are accorded a "presumption of good faith." *Stevens v. State*, 20 F.4th 337, 342-43 (2021). Here, ICE has submitted a reasonably detailed, nonconclusory affidavit describing the efforts outlined below. DSOF ¶¶ 5-30 (citing Exhibit A, Declaration of Fernando Pineiro).

### A. ICE's Searches

Plaintiffs' FOIA request sought "information related to 'citizen's academies' operated by ICE." DSOF ¶ 12. ICE initially determined that its Enforcement and Removal Operations subcomponent and its Homeland Security Investigations subcomponent were the two subcomponents likely to possess responsive records and tasked them to search. DSOF ¶ 13. Enforcement and Removal Operations deferred to the Office of Public Affairs and the Office of Partnership and Engagement, so the FOIA office tasked those offices, as well. DSOF ¶ 16.

#### 1. Enforcement and Removal Operations

Although Enforcement and Removal Operations initially deferred to the Office of Public Affairs and the Office of Partnership and Engagement, ICE's FOIA office subsequently re-tasked Enforcement and Removal Operations to search for responsive records. DSOF ¶ 19. Enforcement and Removal Operations searched its shared drive and its sent and received emails using the search terms "Academy," "Citizens Academy," and "Citizens," but the search yielded no responsive records. DSOF ¶ 20. (As shown below, the searches of the two offices that Enforcement and Removal Operations had initially deferred to *did* yield responsive records, indicating that the initial deferral was correct.)

#### 2. Office of Public Affairs

The Office of Public Affairs searched its shared drive using the search terms "Citizen," "Academy," "Citizens Academy," "Citizens' Academy," "HSI Citizens Academy," "DHS Academy," "Graduation Ceremony," "Citizen Academies," "presentations," "materials," "costs," "invites," and "certificates." DSOF ¶ 22. The office also searched its sent and received emails using the search terms "Academy," "Citizens Academy," "Citizen," "Citizen's Academy," "Citizens' Academy," "HSI Citizens Academy," "DHS Academy," "Graduation Ceremony," "Citizen Academies," "national budget for all ICE citizen academy programs," "training and

3

orientation materials distributed for each session and/or class," "staffing records and data for all ICE citizen academy programs," "ICE policies or protocols for how it selects academy applicants," "tactical equipment used by and/or demonstrated to citizens academy participants," "presentations," "materials," "costs," "invites," and "certificates." DSOF ¶ 23. The office located 1,113 pages of potentially responsive records and sent them to ICE's FOIA office for review and processing. DSOF ¶ 24.

### 3. Office of Partnership and Engagement

The Office of Partnership and Engagement searched its shared drive using the search terms "Citizen," "Citizen's," "Citizen's Academy," "Citizens Academy," "Citizens Academy Atlanta," "Citizens," "HSI Citizen's Academy," "Citizens Academy, CA," "Academy," "HSI Tampa," "HSI Citizens," ""HSI Citizen Academy," "Citizen Academy," "HSI's Citizen Academy," "James Manning," "Sonia Thomas," and "Rachel Yong Yow." DSOF ¶ 33. The office also searched its sent and received emails using the search terms "Citizen," "Citizen's," "Citizen's Academy," "Citizens Academy," "Citizens Academy Atlanta," "Citizens," "HSI Citizen's Academy," "Citizens Academy, CA," "Academy," "HSI Tampa," "HSI Citizens," "HSI Citizen Academy," "Citizen Academy," "HSI's Citizen Academy," "James Manning," "Sonia Thomas," "Maricruz," "Tatum," and "Rachel Yong Yow." DSOF ¶ 33. The office located 343 pages of potentially responsive records and sent them to ICE's FOIA office for review and processing. DSOF ¶ 27.

### 4. Homeland Security Investigations

Homeland Security Investigations searched its shared drive using the search terms "Citizens," "Citizens Academy," "Citizen's Academy," "Citizen Academy," "Academy," "ICE Citizen Academy," "ICE Citizens Academy," "HSI Citizens Academy," "Citizens Academy Training," "Citizens Academy Schedule," "Use of Force," "Citizen's Academy (CA)," "2019 Class," "Invitation." "Participants," "Staff," "Training," "Presentation," "Agenda," "Memo,"

4

"Receipts," "Procedures," "Equipment," and "CPI PSA." DSOF ¶ 28. It also searched its sent and received emails using the search terms "Citizens," "Citizens Academy," "Citizen's Academy," "Citizen Academy," "ICE Citizen Academy," "ICE Citizens Academy," "Citizens Academy Denver," "ICE Citizens Academy," "HSI Citizens Academy," "Citizens Academy Training," "Citizens Academy Schedule," "Citizens Academy Nomination," "certificates," "tent cards for participants," "Use of Force," "Citizens '19," "Citizens 2019," "Academy 2019," "Academy 2020," "Citizens Academy 2021," "Academy 2021," "Citizens '20," "Citizens '21," "Scenarios," "Participants," "PCTW," "Nominees," "Citizen's Academy (CA)," "2019 Class," "Invitation," "Staff," "Training," "Presentation," "Agenda," "Memo," "Receipts," "Procedures," "Equipment," "HSI Miami," and "Staffing." DSOF ¶ 29. Homeland Security Investigations located 7,308 pages of potentially responsive records and sent them to ICE's FOIA office for review and processing. DSOF ¶ 30.

### B. Adequacy

The searches that ICE conducted were adequate because they constituted a "good faith effort" to find responsive records, and ICE's approach was "reasonable in light of the request." *Stevens v. State*, 20 F.4th 337, 342 (2021) (quotation omitted). The question the court considers "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quotation omitted). Here, all four subcomponents used a variety of search terms to capture records referring to ICE's citizen's academy program, which is exactly what plaintiffs had requested. DSOF ¶¶ 20, 22-23, 25-26, 28-29. In sum, ICE met its obligation to search for responsive records.

## II. No Information Improperly Withheld

ICE has also satisfied the second requirement for summary judgment: it did not improperly withhold records. An agency must release responsive information unless it is protected from disclosure by one or more of nine FOIA exemptions. 5 U.S.C. § 552(b); *Stevens*, 20 F.4th at 344 (agency need not release material that "falls under one of the nine FOIA exemptions"). An agency bears the burden of showing that an exemption applies. 5 U.S.C. § 552(a)(4)(B); *NRDC v. NRC*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). Here, ICE withheld information exempt from disclosure under FOIA exemptions 5, 6, 7(C), and 7(E). DSOF ¶ 32. And as explained more thoroughly below, ICE's declaration and *Vaughn* index adequately describe the withheld material and the justifications for nondisclosure. DSOF ¶¶ 33-43; *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973); *Stevens v. DHS*, 2014 WL 5796429, *4 (N.D. Ill. Nov. 4, 2014) (summary judgment appropriate if agency affidavits "describe the documents withheld and the justifications for nondisclosure in enough detail and with enough specificity to demonstrate that material withheld is logically within the domain of the exemption claimed").

### A. Exemption 5 (deliberative process)

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with an agency." 5 U.S.C. § 552(b)(5). To qualify for this exemption, a document must fall within the ambit of the traditional privileges that the government could assert in civil litigation against a private litigant. *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004). Those privileges are the attorney-client, attorney work-product, and deliberative-process privileges. *Barnes v. IRS*, 60 F.Supp.2d 896, 901 (S.D. Ind. 1998) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). Here, ICE withheld information under the deliberative-process privilege. DSOF ¶ 34..

The deliberative-process privilege protects records "reflecting advisory opinions,

recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008). To qualify for the deliberative-process privilege, the information must be: (1) "predecisional," meaning it must be antecedent to the adoption of an agency policy; and (2) "deliberative," meaning it reflects the give-and-take of the consultative process. *Reilly v. Dep't of Energy*, 2007 WL 4548300, *4 (N.D. Ill. Dec. 8, 2017). The privilege reflects "the legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible." *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997); *see also United States v. Nixon*, 418 U.S. 683, 705 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.").

Here, ICE withheld pre-decisional, deliberative internal discussions and recommendations between DHS and ICE employees regarding how to respond to media inquiries about the citizen's academy program, as well as information about the program's operational planning. DSOF ¶ 34. ICE released its *final* responses to the media inquiries but withheld the *pre-decisional* discussions that occurred before the responses were finalized. DSOF ¶ 34. The discussions were pre-decisional in nature because they were held for the purpose of helping to make a final decision on how to respond to outside inquiries. DSOF ¶ 35. Releasing the material would chill ICE's internal decision-making processes because it would discourage the expression of candid opinions, inhibit the free and frank exchange of information between agency counsel, and ensure that personnel would be less inclined to produce and circulate materials for consideration and comment by coworkers. DSOF ¶ 35.

In sum, the material ICE withheld under Exemption 5 falls squarely within the class of

material that Exemption 5 protects from disclosure. *Russell v. Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (deliberative-process privilege applies to documents that "would expose to public view the deliberative process of an agency"); *Jordan v. DOJ*, 591 F.2d 753, 773 (D.C. Cir. 1978) ("officials should be judged by what they decided[,] not for matters they considered before making up their minds") (quotation omitted); *In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008) (drafts "by their very nature" are "typically predecisional and deliberative" because they reflect "tentative" views "that might be altered or rejected upon further deliberation"); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 303 (D.D.C. 2007) ("drafts are commonly found exempt under the deliberative process privilege"). Considerable deference should be given to ICE's judgment about what constitutes the give-and-take of deliberative process, because an agency is best situated "to know what confidentiality is needed 'to prevent the injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F.Supp. 114, 118 (D.D.C. 1984) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151). ICE properly withheld this information.

      **B.**      **Exemption 6 and 7(C) (personal privacy)**

Exemption 6 protects information when its release would be a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (courts broadly interpret Exemption 6 to encompass all information applying to a particular individual). To determine whether releasing information would constitute a "clearly unwarranted invasion of personal privacy," the court balances the interest of protecting a person's private affairs from unnecessary public scrutiny against the public's right to governmental information. 164 F.3d at 46. The *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure would shed light "on the agency's performance of its statutory duties" or otherwise let citizens know what their government is up to. *Id*. Similarly, Exemption

8

7(C) protects from disclosure "records or information compiled for law enforcement purposes," if the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Here, ICE redacted names and other personally identifying information of ICE employees and of third parties. DSOF ¶ 36. In recent years, ICE employees have received an increased amount of threats, intimidation, and personal attacks due to the nature of their work, and publicly disclosing their names and other personal information could subject them to harassment or harm. DSOF ¶ 37. Likewise, third parties have a privacy interest in not being publicly associated with law enforcement organizations through the release of records compiled for law enforcement purposes due to the stigmatizing connotation that could come from being mentioned in law enforcement files. DSOF ¶ 39. Their privacy interest outweighs the minimal (if not non-existent) public interest in the information's disclosure, and disclosing the information would serve no public benefit and would not assist the public in understanding how ICE performs its statutory duties. DSOF ¶ 39. Indeed, *no* public interest in the disclosure of this type of information likely exists, because its release would not shed light on ICE's operations and activities or add to the public's knowledge of ICE's fulfillment of its statutory duties. DSOF ¶ 39. ICE properly withheld this information under Exemptions 6 and 7(C). *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494-99 (1994) (releasing personal information of third parties and agency employees does not contribute significantly to public understanding of government's operations or activities); *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (burden is on requester to demonstrate sufficient public interest for disclosure).

    C.    **Exemption 7 (law enforcement techniques)**

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes," if the disclosure "would disclose techniques and procedures for law

9

enforcement investigations or prosecutions, or would disclosure guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(C), (E).

Here, ICE withheld law-enforcement-sensitive information, specifically information about the methods ICE uses to conduct operations. DSOF ¶ 41. The withheld information is used to further ICE's obligation to enforce the United States' immigration laws by conducting removal operations and ensuring that the operations are not hindered by the actions of bad actors relying on confidential, law-enforcement-sensitive information and intelligence. DSOF ¶ 42. Disclosing the information would serve no public benefit and could help people circumvent the law. DSOF ¶ 43. In particular, disclosing the methods that ICE uses to conduct removal operations could cause interference with those operations and allow bad actors to evade removal, adversely affect law enforcement operations, or engage in activity that could threaten the safety of ICE employees or the public. DSOF ¶ 43. ICE properly withheld this information. *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) ("Exemption 7(E) sets a relatively low bar for the agency to justify withholding," requiring agency only to "demonstrate logically how the release of the requested information *might* create a risk of circumvention of the law.") (emphasis added, quotation omitted).

### III. Exempted Information Reasonably Segregated

ICE has also fulfilled its obligation to release all reasonably segregable, non-exempt information to plaintiffs. FOIA directs that any "reasonably segregable" portion of a record must be produced after "deletion of the portions which are exempt." 5 U.S.C. § 552(b). But if the proportion of nonexempt material is "relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden," then the material remains FOIA-protected because, "although not exempt, it is not

reasonably segregable." *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable materials. *Stevens*, 2014 WL 5796429 at *9. The court, nonetheless, must make an express finding on the issue of segregability. *Patterson v. IRS*, 56 F.3d 832, 840 (7th Cir. 1995) (remanding when court made no segregability finding).

Here, ICE conducted a line-by-line review to identify information exempt from disclosure or for which a discretionary waiver of an exemption could be applied. DSOF ¶ 44. ICE segregated all information not exempt from disclosure and released those non-exempt portions to plaintiffs. DSOF ¶ 45. ICE did not withhold *any* non-exempt information on the ground that it was not reasonably segregable. DSOF ¶ 46. In sum, ICE has met its burden of showing that it did not withhold any non-exempt information that was reasonably segregable. *See Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992) (veracity of government's submissions regarding reasons for withholding records should not be questioned without evidence of bad faith).

## Conclusion

For the above reasons, the court should enter summary judgment in ICE's favor.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov