UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ORGANIZED COMMUNITIES AGAINST DEPORTATIONS, IMMIGRANT DEFENSE PROJECT, and CENTER FOR CONSTITUTIONAL RIGHTS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendant. | Case No. 21-CV-2519 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Organized Communities Against Deportations, Immigrant Defense Project, and Center for Constitutional Rights, (collectively, "Plaintiffs") sue United States Immigration and Customs Enforcement ("ICE") under the Freedom of Information Act, 5 U.S.C. § 552, to compel ICE to produce records relating to its "Citizens Academy" programs. The parties filed cross-motions for summary judgment. [67], [75]. On May 8, 2024, this Court issued a Memorandum Opinion and Order granting in part, and denying in part, the parties' cross-motions. [85]. That ruling only determined the issue of the adequacy of ICE's search under the FOIA; the Court reserved ruling on the propriety of ICE's withholdings and redactions under FOIA pending its *in camera* review of a representative sample of the contested documents. *See, e.g., Boundaoui v. Fed. Bureau of Investigation*, No. 17 CV 4782, 2024 WL 2019532, at *4 (N.D. Ill. May 3, 2024 ("Representative sampling is an

1

appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved.") (quoting *Blanck v. FBI*, 2009 WL 728456, at *2 (E.D. Wis. Mar. 17, 2009)). Consistent with this Court's Order, the parties submitted an agreed representative sampling of documents[1] and articulated the outstanding issues respecting ICE's withholdings and redactions in a Joint Status Report filed June 12, 2024. [86].

As explained below, the Court now finds that ICE has demonstrated that the FOIA exemptions apply to the withheld and redacted documents and that ICE produced all non-exempt segregable information. Accordingly, the Court grants judgment for Defendant on the issue of ICE's withholdings and redactions from the initial set of productions, which were the subject of the parties' cross-motions, [67], [75].

I.  **FOIA Exemptions**

In this case, ICE withheld certain documents from disclosure and redacted other documents under FOIA Exemptions 5, 6, 7(C), and 7(E). [68] at 6. ICE also prepared and filed a *Vaughn* Index[2] describing the bases for its withholdings and redactions, which it attached to the affidavit of ICE FOIA Director Fernando Piniero.

---

[1] As directed, ICE submitted redacted and unredacted versions of the representative documents organized by exemption.

[2] A "*Vaughn* Index describes the documents withheld or redacted and the FOIA exemptions invoked and explains why each exemption applies." *Stevens v. Broadcasting Bd. of Governors*, No. 18-cv-5391, 2023 WL 2428839, at *6 (N.D. Ill. Mar. 9, 2023) (quoting *White Coat Waste Project v. U.S. Dep't of Veterans Affs.*, 404 F. Supp. 3d 87, 94 n.4 (D.D.C. 2019)).

[77] ¶¶ 32–33; [69] at 29–107.[3]  Plaintiffs only contest ICE's application of Exemptions 6 and 7(E) to redact certain information. [76] at 11–15.

Under FOIA, the law requires federal agencies upon request to disclose records in their possession, subject to nine exemptions. *See* 5 U.S.C. § 552(a), (b). The exemptions generally serve to "balance the public's need for access to official information with the Government's need for confidentiality." *Weinberger v. Catholic Action of Hawaii,* 454 U.S. 139, 144 (1981). Although these exemptions are "narrowly construed," *Milner v. Dep't of Navy,* 562 U.S. 562, 565 (2011), each must be given "meaningful reach and application," *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989).

ICE bears the burden to justify its withholdings (whether full or partial) by establishing that one of the statutory exemptions applies.  5 U.S.C. § 552(a)(4)(B); *Enviro Tech Int'l, Inc. v. U.S. Envtl. Prot. Agency*, 371 F.3d 370, 374 (7th Cir. 2004). ICE can carry this burden by submitting affidavits that: "(1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *White v. Dep't of Just.*, 460 F.Supp.3d 725, 738 (S.D. Ill. 2020) (quoting *Kimberlin v. Dep't of* Treasury, 774 F.2d 204, 210 (7th Cir. 1985)). Summary judgment in ICE's favor remains appropriate "only if 'the agency affidavits describe the documents withheld and the justification for nondisclosure in enough

---

[3] The *Vaughn* Index designates the documents ICE withheld in their entirety as a "Withholding: Full" and the documents ICE redacted as a "Withholding: Partial." *See* [69] at 29–107.

detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption applied." *Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir. 1995) (quoting *PHE, Inc. v. Department of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993)).

In considering whether an exemption remains justified, this Court considers the affidavits submitted by the agency (Piniero's Declaration and Supplemental Declaration), the *Vaughn* Index, and the stipulated representative sample of documents submitted for the Court's *in camera* review. *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875–76 (7th Cir. 2018); *Stevens v. United States Dep't of State*, 20 F.4th 337, 345 (7th Cir. 2021); *see also* [85] (joint status report of parties indicating that documents constitute an agreed representative sample of records listed in *Vaughn* Index and inviting the Court to rule on the appropriateness of ICE's withholdings after reviewing the *in camera* submission). Having considered these sources, the Court finds that it has an adequate factual basis to make its determination, *see Rubman v. U.S. Citizenship & Immigr. Servs.,* 800 F.3d 381, 388 (7th Cir. 2015), and further finds that ICE has demonstrated that the withheld and redacted documents fall within the identified Exemptions: 5, 6, 7(C) and 7(E). Opposing summary judgment, Plaintiffs contest only ICE's application of Exemptions 6 and 7(E). [76] at 11–13. The Court thus conducts a more detailed analysis of these exemptions in turn.

## A. Exemption 6

Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption's scope is not limited "to a narrow class of files containing only a discrete kind of personal information"; rather, the exemption covers any "detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.,* 456 U.S. 595, 602 (1982) (internal citations omitted).

When a FOIA request for government records seeks disclosure of information applying to a particular individual, the Court "must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy," *id.* at 602, a determination that requires the Court to balance the privacy interests against the claimed public interest. *See White,* 460 F. Supp. 3d at 753–55.

Courts have recognized a privacy interest where the disclosure affects "the individual's control of information concerning his or her person," *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989), and where disclosure "would possibly expose the individual to harassment," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176–77 (1991). But the "*only* relevant public interest" in the FOIA balancing analysis is "the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Stevens v. U.S. Immigr. & Customs Enf't*, 432 F. Supp. 3d 752, 765 (N.D. Ill. 2020) (quoting *Dep't of Defense v. Fed. Labor*

5

*Relations Auth.,* 510 U.S. 487, 497 (1994) (emphasis added)). *See also Henson*, 892 F.3d at 878 (noting that FOIA "requires transparency from the government—not the [defendant's] patients and employees whose personal information was redacted).

Here, ICE applied Exemption 6 to withhold from disclosure the names, contact information, office numbers, initials, social security numbers, and other personally identifiable information of third-party individuals, including Citizens Academy participants, and ICE employees. [69] at 13, ¶ 54.[4] Plaintiffs specifically contest ICE's application of Exemption 6 to redact names and employment information (employer and titles) of individuals identified on the Citizens Academy participant lists, and in the nomination forms, application forms, and emails ICE produced. [76] at 11.[5] According to Plaintiffs, program participants' employment information "does not contain personally identifying information or pose a threat to an individual's personal privacy" because these individuals "voluntarily applied to participate." *Id.* at 12. Plaintiffs acknowledge that the individuals' names present a "closer question,"

---

[4] Initially, ICE applied Exemption 7(C), in addition to Exemption 6, to withhold this information. Exemption 7(C)'s privacy protections are "broader" than Exemption 6's protections. *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989); *Patterson v. I.R.S., 56 F.3*d 832, 838 (7th Cir. 1995) ("According to the legislative history, the distinction in the statutory language "was intended to provide somewhat broader protection for privacy interests under Exemption 7(C) than normally afforded under Exemption 6."). Thus, if Exemption 7(C) applied to the challenges information, this Court would need not consider Exemption 6. *Jackson v. U.S. Department of Justice*, 596 F.Supp.3d 1119, 1124 (N.D. Ill. 2022) (first citing *Rimmer v. Holder*, 700 F.3d 246, 256 (6th Cir. 2012), then *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 854 F.3d 675, 681 (D.C. Cir. 2017)). But here, the challenged redacted records were not compiled for "adjudicatory or enforcement purposes," *see Patterson*, 56 F.3d at 837, and thus Exemption 7(C) does not apply to the redactions. Accordingly, the *Vaughn* index reflects that ICE "no longer asserts (b)(7)(C)" as the basis for its redaction of several documents.

[5] Plaintiffs do not contest ICE's application of Exemption 6 to redact personally identifiable information of ICE employees.

but state that, given the Citizen Academies' "training topics," the public "has an interest in knowing" who is participating. *Id.* at 6.

Here, the Court finds that ICE has sufficiently invoked Exemption 6 to redact the third-party individuals' names and employment information. Piniero's Declaration asserts that ICE identified strong privacy interests in withholding this information to protect the third-party individuals from harm, identity theft, and unwanted contact from persons seeking to harm them. [69] at 14, ¶ 55. The Declaration further identifies privacy interests in program participants "not being publicly associated with law enforcement organizations" given the "stigmatizing connotation carried by the mere mention of individuals in law enforcement files." *Id.* at 14, ¶ 58. Balancing these privacy interests against the public interest in disclosure, ICE concluded that disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Id.* at 15, ¶ 59.

In addition to Piniero's Declaration, ICE provided a 79-page *Vaughn* Index, which reports and describes, for each challenged record, the "Document Description," "Redacted Information," and "Reason(s) for Redactions." For example, the *Vaughn* Index identifies the "List of HSI Citizen's Academy Participants," which this Court reviewed *in camera*. [69], Vaughn Index, at 7.[6] That list details the names of program

---

[6] The *Vaughn* Index explains:

The disclosure of the names of third parties could reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; placing them in danger, as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and minimizing the ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public

participants, their email addresses, profession (employer and title), whether they had accepted a spot in the program, and the status of their background check. *Id.* The *Vaughn* index specifies that the disclosure of the names and personal identifying information of third-parties in this document implicates those individuals' "personal privacy interests" in "not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others." *Id.* ICE determined, according to the index, that disclosure of this information "would not assist the public in understanding how the agency is carrying out its statutory responsibilities." *Id.*

Despite some speculative assertions in the ICE materials, the record still confirms the existence of cognizable privacy interests under Exemption 6 and, having reviewed the representative sample of documents provided, the Court finds the asserted privacy interests legitimate. Indeed, Plaintiffs concede the strong privacy interest that exists in disclosing participants' names as balanced against Plaintiffs' asserted interests. *See* [76] at 13. Plaintiffs argue that program participants' employment information "does not contain personally identifying information or pose

---

interest that could possibly exist in the disclosure of this information. The disclosure of third-party PII could reasonably be expected to constitute an unwarranted invasion of individuals' personal privacy interests in not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.[69], Vaughn Index, at 7.

a threat to an individual's personal privacy." *Id.* at 12. According to ICE, however, "many of the citizens academy participants had notable and unique job titles with prominent employers," such that disclosing the redacted employment information, "combined with the geographic area and calendar year would likely lead to the discovery of particular individuals' identities." [79] at 11; *see also* [69] ¶ 60. Based upon its review of the employment information contained in the sample provided, the Court agrees with ICE. Consistent with ICE's representation, disclosure of program participants' employment information here reveals, ultimately, these employees' names, which Plaintiffs concede may be withheld. In short, the privacy interests implicated by disclosure of the information ICE withheld or redacted under Exemption 6 remain substantial. That these individuals "volunteer" to participate in Citizens Academy programs generally does not undermine these interests.

Plaintiffs have not explained exactly how disclosure of this information would assist the public in understanding how ICE carries out its statutory responsibilities. *Stevens*, 432 F. Supp. 3d at 765. Nonetheless, to the extent a public interest might be implicated in knowing the employers ICE sought for its Citizen Academy programs, the interest is far outweighed by the identified privacy interests at stake, such that disclosure of the information ICE has withheld under Exemption 6 would constitute a "clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). Accordingly, ICE properly invoked Exemption 6 to withhold and redact program participants' names and employment information.

9

### B. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records to the extent that production of such records or information "would disclose techniques or procedures for law enforcement investigations or prosecutions" or "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of law." 5 U.S.C. § 552(b)(7)(E). Courts have interpreted this exemption to set a "low bar" for an agency to justify withholding information from disclosure. *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011). To justify withholding documents under this exemption, an agency must only "demonstrate logically how the release of the requested information might create a risk of circumvention of law." *Id.* (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

Here, ICE easily clears this low bar invoking Exemption 7(E) to withhold "law enforcement sensitive information," including the disclosure of methods that ICE uses to conduct operations," and "detailed information on how the techniques and procedures are *currently* used." [69] at 27, ¶¶ 63, 66 (emphasis added). Piniero's Declaration specifies that the redacted documents contain sensitive information "utilized by law enforcement to further ICE's obligation to enforce the immigration laws," specifically, information regarding ICE's methods for removal operations. *Id.* ¶ 64. The Declaration explains that disclosure of this information "could assist third parties in circumventing the law" because "bad actors could use this information to evade removal" and individuals could use this information to "adversely affect law

10

enforcement operations or engage [in] activity that would sacrifice the safety of both ICE employees and the public at large." *Id.* ¶ 65.

ICE articulated these same bases in its *Vaughn* Index. For example, ICE redacted a PowerPoint titled "Homeland Security Investigations Interviewing Training program," which "discusses the main ideas behind investigative interviews, planning for the interviews, and techniques used in conducting of interviews." [69], *Vaughn* Index, at 46. ICE further explains in the Index that it partially redacted specific pages of that document to remove law enforcement techniques used while conducting interviews of witnesses and victims, because "knowledge of specific law enforcement techniques could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations." *Id.* Thus, while ICE disclosed a slide from this deck showing the title "Question Types to Elicit Admissions," ICE redacted the training material itself, which appeared under that title on the slide.

Plaintiffs challenge ICE's use of Exemption 7(E) to withhold the techniques and procedures it shares with Citizens Academy participants, arguing that ICE has not shown that the techniques or procedures remain unavailable to the public or explained how, if disclosed, such information could lead to circumvention of law. [76] at 13–15. Plaintiffs contend that the withheld information is "known to many members of the public" because it is voluntarily shared with civilian participants of Citizens Academy programs. [76] at 14. And even if ICE's use of the exemption would otherwise be valid, Plaintiffs claim that ICE's voluntary disclosure of these

11

techniques waives its right to invoke this FOIA exemption. *Id.* at 15. ICE counters that there is a difference between voluntarily disclosing certain law enforcement techniques to "*people who were approved to participate in an ICE program after undergoing a background check*" and disclosing techniques "to *the general public*." [79] at 13 (emphasis in original).

The Court again agrees with ICE; the agency's previous disclosure of its techniques to a limited group of approved persons who undergo background checks in no way undermines or waives its demonstrated privacy interests in not disclosing this information to the public generally. *See* [82] ¶ 61; [77] ¶¶ 36–43 (explaining that given the sensitive nature of some of the information shared, those selected to participate would undergo a background check before participating); *see Jackson,* 596 F. Supp.3d at 1125–26 (N.D. Ill. 2022) (explaining that Department did not waive its privacy interests in unredacted videos when they were previously shared in a limited context, in a controlled environment when used as evidence in an open trial, as that was "markedly different" from the type of unredacted disclosure that would occur to plaintiffs); *see also Reporters Comm.*, 489 U.S. at 762 ("The fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information.") (internal citations and quotations omitted).

Through Piniero's Declaration and the accompanying *Vaughn* index, ICE has "logically shown" how the withheld records, if disclosed, would create a risk of circumvention of law, which suffices to justify Exemption 7(E). *See Mayer Brown LLP,* 562 F.3d at 1194. Further, as with the documents withheld pursuant to

12

Exemption 6, the Court verified the accuracy of the *Vaughn* Index with respect to the documents it reviewed *in camera*. Based upon that review, the Court finds ICE's withholdings and redactions under Exemption 7(E) proper.

## II.     Segregability

FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (citing 5 U.S.C. § 552(b)). An agency thus must disclose non-exempt portions of a document unless they are "inextricably intertwined with exempt information." *Milton v. U.S. Dep't of Just.*, 842 F. Supp. 2d 257, 259 (D.D.C. 2012). If the "proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected because, although not exempt, it is not reasonably segregable." *Stevens v. United States Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at *9 (N.D. Ill. Nov. 4, 2014) (citing *Solar Sources*, 142 F.3d at 1039).

Agencies are entitled to a "presumption that they complied with the obligation to disclose reasonably segregable material." *Stevens v. United States v. Dep't of Homeland Security*, No. 13 C 03382, 2014 WL 5796429, at *9 (N.D. Ill. Nov. 4, 2014) (quoting *Susman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)); *see also Hodge v. FBI,* 703 F.3d 575, 582 (D.C. Cir. 2013) (same). But the Seventh Circuit has instructed that district courts may not approve an agency's withholding of entire

13

documents "without entering a finding on segregability of the exempt information." *Patterson,* 56 F.3d at 840 (citing *Krikorian v. U.S. Dep't of State,* 984 F.2d 461, 467 (D.C. Cir. 1993)). Thus, to satisfy its obligation, an agency must provide the Court with a "relatively detailed description" of the "withheld material." *Farahi v. Fed. Bureau of Investigation*, 643 F. Supp. 3d 158, 175–76 (D.D.C. 2022) (citing *Jud. Watch, Inc. v. United States Dep't of Def.,* 245 F. Supp. 3d 19, 36 (D.D.C. 2017)). The agency need not, however, "provide so much detail that the exempt material would be effectively disclosed." *Ecological Rts. Found. v. U.S. Env't Prot.* Agency, 541 F. Supp. 3d 35, 66 (D.D.C 2021) (citing *Johnson v. Exec. Off. for the U.S. Atty's,* 310 F.3d 771, 776 (D.C. Cir. 2002)). Generally, affidavits "attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents containing releasable information which could be reasonably segregated from the non-releasable portions,' in conjunction with a *Vaughn* index describing the withheld record suffice." *Ecological Rts. Found.,* 541 F. Supp. 3d at 66 (quoting *Johnson v. Exec. Off. for the U.S. Atty's,* 310 F.3d 771, 776(D.C.Cir.2002)).

Here, Plaintiffs do not challenge the presumption that ICE complied with its obligation to disclose reasonably segregable material, and the Court finds that ICE has satisfied that duty. Director Piniero indicates that ICE conducted a line-by-line review of the withheld documents "to identify information exempt from disclosure or for which a discretionary waiver for an exemption could be applied." [69] at 17, ¶ 69. He further states that ICE segregated "all information not exempted from disclosure pursuant to the FOIA exemptions" and released non-exempt portions. [69] at 17, ¶

14

70. ICE also did not withhold any information as "non-segregable." *Id.* Moreover, ICE's *Vaughn* index describes each document withheld in full or in part, describes the information withheld, and explains with sufficient particularity the agency's reasons for withholding that information. As a result, ICE has complied with its segregability obligations under FOIA. *See Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "description of the document set forth in the *Vaughn* index and agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination"); *Judicial Watch*, 245 F. Supp. 3d at 37 (finding agency satisfied its duty to disclose reasonably segregable information where declaration provided about the withheld memoranda and asserted that the agency "conducted a document-by-document and line-by-line review and determined that no segregable, non-exempt portions of the [withheld memoranda] can be released without potentially compromising privileged information); *Erwin v. United States Dep't of State*, No. 11 C 6513, 2013 WL 6452758, at *7 (N.D. Ill. Dec. 9, 2013) (finding Department satisfied duty where for each of documents to be withheld in full, the *Vaughn* index described information withheld in detail and explained with "sufficient particularity why the Department withheld the entire document," and plaintiff provided no evidence to overcome presumption).

This Court's *in camera* review confirms ICE's claim that it redacted only exempt information. As a result, this Court finds that ICE met its burden to establish the non-segregability of the withheld information. *See Ecological Rights*, 541 F.Supp.3d at 66 (explaining that EPA established non-segregability of the disputed

information where declaration averred that "all of the information withheld…as carefully reviewed to ensure the Agency has disclosed all reasonably segregable non-exempt information" and EPA produced disputed information "with only the agents' identifying information redacted"). The Court accordingly grants summary judgment for Defendant on the propriety of its withholdings and redactions from its initial productions.

### III. Conclusion

As explained above, the Court finds that ICE properly applied FOIA's exemptions, and conducted a proper segregability analysis. Accordingly, the Court grants Defendant's motion for summary judgment [67] and denies Plaintiffs' cross-motion for summary judgment [75], on the issue of ICE's withholdings and redactions under FOIA.

Dated: August 16, 2024

ENTERED:

_____
John Robert Blakey
United States District Judge